UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Action No. 1:19-cr-10207-IT-2 |
| | * | |
| LUCSON APPOLON, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

September 15, 2022

TALWANI, D.J.

On September 11, 2019, Defendant Lucson Appolon pleaded guilty to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. The court sentenced him to two years and one day of incarceration followed by a three-year term of supervised release. Now pending before the court is Appolon's Motion/Brief to Post-Conviction Relief [Doc. No. 125], which the court treats as a motion to vacate under 28 U.S.C. § 2255. Appolon, proceeding *pro se*, alleges ineffective assistance of counsel for failure to advise him on the immigration consequences of his plea. For the following reasons, the motion is DENIED.

I.  Background

   A. *Factual Background*[1]

Beginning in or about August 2018, Appolon conspired with co-conspirators to obtain the personal information of numerous Massachusetts residents, without their knowledge or consent, to create accounts with the Informed Delivery service, a service offered by the United States

---

[1] Because Appolon's conviction stems from a guilty plea, the facts are drawn from the transcript of the sentencing and plea hearings. See United States v. Connell, 960 F.2d 191, 193 (1st Cir. 1992); United States v. Garcia, 954 F.2d 12, 14 (1st Cir. 1992).

Postal Service that allows users to digitally monitor and manage their incoming mail and packages. Appolon and his co-conspirators then used these same individuals' personal information, including their names and addresses, to sign them up for credit cards. Using the fraudulent Informed Delivery accounts to monitor the delivery of the credit cards to the residents' addresses, Appolon and his co-conspirators then traveled to these locations to collect the credit cards. Appolon and his co-conspirators used these credit cards at ATMs and various retail establishments.

B. *Guilty Plea*

During Appolon's plea hearing on September 11, 2019, the court inquired into whether Appolon was satisfied with "the counsel, representation and advice given to you in this case by your attorney?" Plea Tr. 7:15-17 [Doc. No. 146-3]. Appolon initially responded, "No," but when the court pressed further, asking "if there was a reason that he was "dissatisfied with [his] attorney," Appolon again replied, "No." Id. at 7:19-23. The court rephased the question to ask if Appolon was "satisfied with [his] lawyers and the advice they have been giving to [him] in this case." Id. at 7:24-8:1. Appolon responded "Yes" to this inquiry. Id. at 8:2. The court then asked Appolon if he was "prepared to go ahead with these proceedings having received the advice that [he has] from [his] attorneys," and Appolon responded, "Yeah." Id. at 8:6-9.

During the plea colloquy, Appolon acknowledged that he was not a United States citizen. Id. at 16:18-19. The court inquired as to whether Appolon understood that "by pleading guilty, because you're not a United States citizen, you may be removed from the United States, denied citizenship and denied admission to the United States in the future." Id. at 16:20-23. Appolon first responded, "No, I didn't know that." Id. at 16:24. Appolon's counsel interjected that he believed Appolon understood and was advised on the likelihood of his deportation, but that

Appolon "intends to fight any deportation proceedings." Id. at 17:2-6. The court asked Appolon if he "discussed the potential immigration consequences with [his] counsel," and Appolon conferred with his counsel and responded, "Yeah, yeah." Id. at 17:12-15. The court then expressly reiterated, "I do need to make sure you understand that having a felony conviction will put you in the category of persons who may be removed from the United States and may be denied citizenship and may be denied admission to the United States in the future. Do you understand that?" Id. at 17:18-23. Appolon responded, "Yes." Id. at 17:24.

Furthermore, during the plea colloquy, Appolon's counsel stated his opinion that Appolon "will be removed from the United States based on his conviction" and that he had conveyed that opinion to Appolon. Id. at 18:6-9. Appolon confirmed that although he and his counsel did not discuss immigration consequences "a lot," they "talked about [them] a little." Id. at 18:13-14. The court, again, expressly asked Appolon if he understood that his counsel's opinion was that he would likely be deported, stating "do you understand that it is your attorney's view, and I don't disagree with it, that it is most likely that you will be removed from the United States based on this criminal conviction and that you will not be permitted to return? Do you understand that?" Id. at 18:15-21. Appolon responded, "Yes, ma'am." Id. at 18:22. The court accepted Appolon's guilty plea, finding him fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, and that the plea of guilty was knowing and voluntary. Id. at 38:5-12.

C. *Sentencing*

Appolon appeared before this court on December 5, 2019, for sentencing. Appolon answered "Yes" when the court asked if he was "comfortable proceeding in these proceedings in

3

English" and "No" when the court asked if he had "any concerns whatsoever about proceeding in English." Sentencing Tr. 6:14-23 [Doc. No. 146-4].

The government requested incarceration of 45 months and three years of supervised release. Gov. Sentencing Mem. [Doc. No. 70]. Appolon's counsel requested a below guideline sentence of two years and one day incarceration and one year of supervised release. Def. Sentencing Mem. [Doc. No. 68]. The court sentenced Appolon to one day on Count One and two years on Count Four, to be served consecutively, and ordered a three-year term of supervised release. In imposing the below-guideline sentence, the court found that "the potential immigration consequences can't be understated, that . . . the consequences of what you have done here is that . . . you may be removed from the country because of this." Sentencing Tr. 43:14-23 [Doc. No. 146-4].

D.  *Post-Sentence Motion to Vacate*

On August 9, 2021, Appolon filed the pending Motion to Vacate under 28 U.S.C. § 2255 [Doc. No. 125] from ICE detention.[2]

---

[2] On the government's unopposed motion, the court found that Appolon, having claimed ineffective assistance of counsel, waived his attorney-client privilege with respect to communications with his attorney necessary to prove or disprove those claims. Order [Doc. No. 137]. The government then filed affidavits from Appolon's attorneys in which each stated that he had "specific memories of meeting with Appolon and advising him several times that he would likely be subject to deportation if he pleaded guilty to the crimes charged in the Indictment in this matter." Aff. of Joshua N. Ruby [Doc. No. 146-2]; Aff. of George W. Vien [Doc. No. 146-2]. Appolon subsequently contended that he was not properly served with the government's motion, Mot. to Deny Gov't Motion [Doc. No. 148], and the court granted Appolon leave to address the issue in a reply to the government's Opposition [Doc. No. 146] to Appolon's § 2255 petition. No such reply was filed. Nonetheless, as set forth below, the § 2255 petition can be resolved without reference to the affidavits from Appolon's counsel.

II.     Standard of Review

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his or her sentence. Relief may be granted on the grounds that (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," and (4) the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a). In seeking to collaterally attack a conviction, the burden is on the petitioner to show entitlement to relief, David v. United States, 134 F.3d 470, 474 (1st Cir. 1998), including entitlement to an evidentiary hearing, Cody v. United States, 249 F.3d 47, 54 (1st Cir. 2001). See also Rules 4 and 8 of the Rules Governing Section 2255 Proceedings. "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the [court] shall make an order of summary dismissal." Rule 4(b) of the Rules Governing Section 2255 Proceedings. When, as here, "a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

A motion that is filed *pro se* must be construed more leniently than one drafted by an attorney. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). But the motion must nevertheless comply with the procedural and substantive requirements of the law. See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

III.     Discussion

Appolon argues he is entitled to relief under 28 U.S.C. § 2255 because his attorney provided ineffective assistance when counseling him to enter a guilty plea before this court. To succeed on an ineffective assistance of counsel claim, a petitioner must establish two elements. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 690 (1984). This is a "highly deferential" standard carrying "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Second, the petitioner must establish prejudice by showing "there is a reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The court need not address both elements if the petitioner makes an insufficient showing on one of them. Id. at 697. The essence of an ineffective assistance of counsel claim is that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The Constitution does not guarantee a defendant a perfect or successful defense. See Moreno-Espada v. United States, 666 F.3d 60, 65 (1st Cir. 2012). Rather, "the performance standard is that of reasonably effective assistance under the circumstances then obtaining." United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991).

Appolon argues he is entitled to relief because his attorney failed to "advise [him] . . . that his guilty plea will affect his Immigration Status," allegedly causing Appolon to plead guilty without having been advised on the immigration consequences of his conviction as constitutionally required under Padilla v. Kentucky, 559 U.S. 356, 356 (2010) ("counsel must inform a client whether his plea carries a risk of deportation"). While Padilla does impose an obligation on defense counsel to inform a defendant of potential immigration consequences of a

plea, here, Appolon's claim that his attorney failed to advise him on the risk of deportation before entering his plea is refuted by the record.

At the time of his guilty plea, Appolon was a lawful permanent resident. While he had expressed to counsel his intention to fight his deportation, the court confirmed numerous times that Appolon understood that "having a felony conviction will put [him] in the category of persons who may be removed from the United States and may be denied citizenship and may be denied admission to the United States in the future." Plea Tr. 17:18-22 [Doc. No. 146-3]. Having admitted to understanding the potential immigration consequences of his conviction, including deportation, during the plea hearing, Appolon "is stuck with the representations that he himself ma[de] in open court at the time of the plea," United States v. Padilla-Galarza, 351 F.3d 594, 598 (1st Cir. 2003), unless the factual allegations in the motion "include credible, valid reasons why a departure from those earlier contradictory statements is now justified," United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984). With no such factual allegations presented, the court relies on Appolon's admissions made in open court as true, and finds his claim that counsel was ineffective in advising him on potential immigration consequences of his plea to lack merit.

IV.   Conclusion

For the foregoing reasons, Appolon's Motion to Vacate [Doc No. 125] is DENIED.

IT IS SO ORDERED.

September 15, 2022                              /s/ Indira Talwani
                                                United States District Judge